UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:12CR327 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH PIROSKO | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court on Defendant Joseph Pirosko's ("Defendant") Motion to Suppress Evidence and Oral Statements (ECF DKT #34) ("Motion"). In particular, Defendant argues that the Court must apply the *Daubert* reliability standards to the probable cause analysis of a search warrant. Defendant requests the evidence be suppressed or, alternatively, and at a minimum, Defendant be granted an evidentiary hearing. The Court has reviewed the Motion, the Government's Response in Opposition to Defendant's Motion to Suppress (ECF DKT #38) ("Response"), Defendant's Reply to Government's Response in Opposition to Motion to Suppress (ECF DKT #39) ("Reply"), and the Government's Response in Opposition to Defendant's Reply to Government's Opposition to Defendant's

Motion to Suppress (ECF DKT #40) ("Response in Opposition"). For the following reasons, Defendant's Motion is DENIED without a hearing.

## FACTS

On June 6, 2012, Special Agent Brian Roman of the Department of Homeland Security presented an Application and Affidavit for a Search Warrant to Magistrate Judge Burke. The attached Affidavit described: how a peer-to-peer network works and how the specific law enforcement software interfaced with the network; how law enforcement officers around the world pooled their information on internet child pornography, enabling an easier exchange of information; and what the terms "IP" and "GUID" mean and how they can be used to track internet users. An IP address identifies the location of the internet service being used at a specific time and the GUID identifies the computer being used. Although a GUID is not guaranteed to be unique, the probability of the same GUID being generated by two different computers is very small.

In March 2012, investigator Edward Sexton, with the Nebraska Attorney General's office, opened an investigation into a person sharing child pornography on the Gnutella peer-to-peer network. Sexton established a direct connection with the computer and downloaded multiple files of child pornography. During that time, Sexton noted that the same computer, connected to the same IP address on five different days, was sharing child pornography. The IP address was registered to a Nebraska hotel. The only person who was registered at that hotel for each of those five nights was Defendant.

On March 28, 2012, Sexton established a direct connection with a computer with the same GUID, connected to an IP address registered to a Holiday Inn in St. Louis, Missouri.

Sexton downloaded two files of child pornography.  On April 5, 2012, Sexton noted that a computer with the GUID was connected to an IP address registered to the Quality Inn and Suites in St. Louis, Missouri.  Defendant was a guest at at least one of these hotels.

On April 19, 2012, Sexton established a direct connection with a computer with the same GUID, connected to an IP address registered to a hotel in New Jersey.  He downloaded eleven files of child pornography from the computer.  Between April 23, 2012 and April 30, 2012, Sexton noted that a computer with the same GUID was connected to the IP address registered to a hotel in New Jersey.

On May 10, 2012, Sexton established a direct connection with a computer with the same GUID, connected from an IP address registered to a hotel in Salt Lake City, Utah.  He downloaded one file of child pornography.  Defendant was a guest at that hotel.

On June 4, 2012, Sexton noted that a computer having the same GUID was connected from an IP address registered to the Econo Lodge in Wooster, in the Northern District of Ohio.  The computer having that GUID was sharing child pornography.  Defendant was a guest at the hotel.

On June 6, the Search Warrant for Defendant's room was signed and authorized.  At 7:15 p.m., Defendant was utilizing the peer-to-peer file-sharing software and was sharing several files of child pornography.  Law enforcement executed the Search Warrant at approximately 7:30 p.m.  Defendant was briefly detained and interviewed, while the room was secured.  Defendant was advised of his Miranda rights, told he was free to leave, and was not placed under arrest until law enforcement observed child pornography on Defendant's computer.

**STANDARD OF REVIEW**

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner,* 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied,* 543 U.S. 1095 (2005) (citing *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1991)).

In *Illinois v. Gates,* 462 U.S. 213, 238-39 (1983), the Supreme Court announced the basic standard for determining whether an affidavit establishes probable cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her], ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*See also United States v. Helton,* 314 F.3d 812, 819 (6th Cir. 2003); *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1991).

A magistrate's probable cause finding "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236.  However, reviewing courts must ensure that the issuing

magistrate did "not serve merely as a rubber stamp for the police." *United States v. Leon,* 468 U.S. 897, 914 (1984), quoting *Aguilar v. Texas,* 378 U.S. 108, 111 (1964).  Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'"  *Leon,* at 915, quoting *Gates, supra*, 462 U.S. at 239.

In assessing the issuing magistrate's probable cause finding, the reviewing court concerns itself with only those facts which appear within the four corners of the affidavit. ; *United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir. 1998), citing *Whitely v. Warden,* 401 U.S. 560, 564-65 (1971); *United States v. Hatcher,* 473 F.2d 321, 324 (6th Cir. 1973). However, if the affidavit contains false statements that are shown to have been made knowingly and intentionally, or with reckless disregard for the truth, and if those false statements were necessary to the finding of probable cause, the evidence seized pursuant to the warrant will be suppressed.  *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978). Inaccurate statements that are the result of mere negligence or mistake do not fall within the framework of *Franks. Id.* at 171.  A *Franks* claim entails a two-part analysis: (1) whether the defendant has shown by a preponderance of the evidence that false statements were deliberately or recklessly made, and (2) "whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant."  *United States v. Charles,* 138 F.3d 257, 263 (6th Cir. 1998).

Defendant argues he is entitled to a *Franks* hearing because the magistrate did not apply the *Daubert* reliability factors to the search methodology utilized by the Government. To be entitled to a hearing, Defendant has a heavy burden.  "His allegations must be more

than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990) (citing *Franks,* 438 U.S. 154, 171 (1978)). Defendant must also accompany his allegations with an offer of proof, such as affidavits or sworn or otherwise reliable statements of witnesses. *Franks*, 438 U.S. at 171. "If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause." *Bennett,* 905 F.2d at 934.

## ANALYSIS

### **Defendant has not shown that he is entitled to a *Franks* hearing**

Defendant has failed to meet the high burden of showing that he is entitled to a *Franks* hearing. Not only has he failed to expressly move the Court for a *Franks* hearing, but he has also failed to point to "specific false statements that the claims were made intentionally or with reckless disregard for the truth." *Franks*, 438 U.S. at 171. He has also not accompanied these allegations with an offer of proof, provided supporting affidavits, or explained their absence. *Franks*, 438 U.S. at 171. Because of this, Defendant has failed to prove that he is entitled to a *Franks* evidentiary hearing.

Additionally, Defendant asserts that the Court should apply the *Daubert* standard in order to determine probable cause. *Daubert* provides the standard for admitting scientific testimony in a trial. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). There is no precedent or authority demanding that the *Daubert* reliability standard must be applied to investigative procedures used by law enforcement in order for the search warrant to contain probable cause for the search, nor does *Daubert* hold that this standard must be

applied to the probable cause analysis.  Therefore the Court rejects this argument.  Here, the affidavit in question included a sworn statement by the affiant that the investigative procedure used was reliable, as determined by many previous investigations employing this same procedure.

Further, even if the Court eliminated all mentions of the law enforcement database or the GUIDs, the Court finds that it was reasonable for the magistrate to find probable cause. As pointed out by the Government, the affidavit established that Defendant, a registered sex offender from Mississippi, was a guest at hotels in Nebraska, Missouri, New Jersey, Utah and Ohio over a three-month period.  During his stays, Defendant connected to the same peer-to-peer network, used the same software, and downloaded images of child pornography from a computer at each of these hotels.

**The "good faith" exception under *United States v. Leon***

Even assuming that the Search Warrant Affidavit lacks probable cause, the Court, nevertheless, must deny Defendant's Motion to Suppress because the law enforcement officials executed the Warrant in good faith.  There is no evidence that the issuing judicial officer was misled by information the affiant knew was false; there is no showing that the issuing judicial officer failed to act in a neutral manner; the Warrant Application was not supported by a mere bare bones affidavit; and the Warrant was not facially deficient in the particularized description of the place to be searched or the things to be seized. *See United States v. Leon*, 468 U.S. 897, 905 (1984).

**Defendant's *Miranda* rights were not violated**

Law enforcement is required to give a suspect in custodial interrogation *Miranda* warnings in order to protect the suspect's Fifth Amendment privilege against self-incrimination.  *See Miranda v. Arizona*, 384 U.S. 436, 477-78.  *Miranda* requires deprivation of "freedom of action in any significant way" in order for a person to be in custody.  *Miranda*, 384 U.S. at 444.  To determine whether the suspect was in custody prior to his arrest, the Court must consider the totality of the circumstances viewed from the perspective of the reasonable man in the defendant's shoes.  *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); *see also United States v. Galloway*, 316 F.2d 624, 629 (6th Cir. 2003).

Here, Defendant was briefly handcuffed and briefly detained in a vehicle outside while the hotel room was secured.  Defendant was then read his *Miranda* rights, even though he was not under arrest.  Law enforcement then removed the handcuffs and informed Defendant that he was not under arrest and that he was free to leave.  The initial interview between law enforcement and Defendant was fifteen minutes long.  Defendant was eventually arrested and handcuffed after another law enforcement officer informed the interviewing officers that child pornography was visible on the computer.  Before his arrest, Defendant was not in custody and was informed that he was not under arrest and that he was free to leave.  Additionally, law enforcement officers read Defendant his *Miranda* rights as a precaution, even though Defendant was not in custody.  As such, the Court finds that Defendant's *Miranda* rights were not violated.

**Defendant failed to clearly and unambiguously invoke his right to counsel**

The Supreme Court has stated that when a suspect is in custody, in order to invoke the right to counsel, the invocation must be clear and unambiguous. *Edwards v. Arizona*, 451 U.S.

477 (1981). Following a clear and unambiguous invocation of the right to counsel, police may no longer interrogate a suspect. *Id.* A request to "maybe" see an attorney does not suffice as a clear and unequivocal request for counsel. *Davis v. United States*, 512 U.S. 452 (1994) ("There is no reason to disturb the conclusion of the courts below that petitioner's remark– "Maybe I should talk to a lawyer"– was not a request for counsel.").

Similar to *Davis*, Defendant in this case did not make a clear and unambiguous invocation of his right to an attorney. Here, Defendant stated that he wanted to talk to his wife and "maybe an attorney." Law enforcement was not required to discontinue their interrogation in the face of this ambiguous statement.

## CONCLUSION

Based on the foregoing analysis, the Court finds that the Search Warrant obtained by law enforcement was sufficient, and that the statements made by Defendant before he was in custody are admissible. Therefore, Defendant's Motion to Suppress Evidence and Oral Statements is DENIED without a hearing.

**IT IS SO ORDERED.**

          **s/ Christopher A. Boyko**
          **CHRISTOPHER A. BOYKO**
          **United States District Judge**

Dated: October 10, 2013